UNITED STATES of America, Appellee,

v.

Peter MONSANTO,
Defendant–Appellant.

No. 436, Docket 87–1397.

United States Court of Appeals,
Second Circuit.

Argued March 30, 1988.

Decided July 1, 1988.

Edward M. Chikofsky, New York City, for defendant-appellant.

John F. Savarese, New York City, Asst. U.S. Atty. S.D. New York (Rudolph W. Giuliani, U.S. Atty. S.D. New York, Aaron R. Marcu, Mark C. Hansen, Deborah E. Landis, Asst. U.S. Attys., of counsel), for appellee.

Arthur Liman, New York City (Gustave H. Newman, Ronald E. DePetris, New York Counsel of Defense Lawyers, New York State Ass'n of Criminal Defense Lawyers, New York Criminal Bar Ass'n, Association of the Bar of the City of New York, Committee on Criminal Advocacy and Committee on Criminal Law, of counsel), as amicus curiae.

Edward J. Kuriansky, New York City, Deputy Atty. Gen. for Medicaid Fraud Control (Arthur A. Munisteri, Elizabeth T. Bogren, Sp. Asst. Attys. Gen., of counsel), as amicus curiae.

Neal R. Sonnett, Miami, Fla. (Benedict P. Kuehne, Sonnett, Sale & Kuehne, P.A., Nancy Hollander, Albuquerque, N.M., for National Ass'n of Criminal Defense Lawyers), as amicus curiae.

Joseph Beeler, Miami, Fla. and Bruce J. Winick, Coral Gables, Fla. (Joseph Beeler, P.A., Bruce J. Winick, for National Network for the Right to Counsel and New York Civil Liberties Union), as amicus curiae.

Before FEINBERG, Chief Judge, OAKES, MESKILL, NEWMAN, KEARSE, CARDAMONE, PIERCE, WINTER, PRATT, MINER, ALTIMARI and MAHONEY, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the United States District Court for the Southern District of New York, Robert J. Ward, J., denying a motion to vacate or modify an ex parte post-indictment restraining order entered pursuant to a provision of the Comprehensive Forfeiture Act of 1984 (CFA), 21 U.S.C. § 853(e)(1)(A) and for a declaration that fees paid to appellant's defense counsel would be exempt from post-conviction forfeiture pursuant to the "relation back" provision of the CFA, 21 U.S.C. § 853(c). The appeal was originally heard by a panel of the court, 836 F.2d 74 (2d Cir.1987), and has been reheard in banc.

The relevant facts of this case, which are described in greater detail in the panel opinion, are as follows. In an indictment unsealed in July 1987, Peter Monsanto was indicted on various RICO, narcotics, continuing criminal enterprise and firearms charges. The indictment specified two parcels of residential real property, valued at $335,000 and $30,000, as well as $35,000 in cash, as "constituting and derived from the proceeds" of violations of Title III of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 et seq., and thus subject to forfeiture pursuant to 21 U.S.C. § 853(a). The district court entered an ex parte restraining order pursuant to 21 U.S.C. § 853(e)(1)(A) prohibiting Monsanto from transferring or encumbering the residential properties.

In August 1987, Monsanto moved to vacate or modify the restraining order, seeking use of the restrained assets to retain private trial counsel and a declaration that fees paid to such counsel would be exempt from post-trial forfeiture. He argued that Congress did not intend the CFA to apply to property needed to pay legitimate attorney's fees and that if the statute did apply to such property it would violate his sixth amendment right to counsel of choice. He challenged not only the post-indictment restraint provision, 21 U.S.C. § 853(e)(1)(A), but also the post-conviction "relation back" provision, 21 U.S.C. § 853(c), which allows the government to seek post-conviction forfeiture of property transferred to third persons, unless such persons establish that they were bona fide purchasers for value who at the time of the purchase were reasonably without cause to believe that the property was subject to forfeiture.

The district court refused to vacate the restraining order, although it acknowledged that the effect of the order was to render Monsanto indigent. The court ruled that it was not prepared to find the forfeiture provisions of the CFA unconstitutional as applied to attorney's fees and that Congress did not intend to exempt such fees from application of the statute. It also denied Monsanto's request for a declaration that fees paid to defense counsel would be exempt from post-conviction forfeiture. The court indicated, however, that it would allow invasion of the forfeitable assets to pay Monsanto's counsel of choice to the extent of the rates established by the Criminal Justice Act, 18 U.S.C. § 3006A (CJA).

Monsanto brought an expedited appeal and a panel of this court issued an opinion in December 1987, with one judge dissenting. 836 F.2d 74 (2d Cir.1987). The panel concluded that the post-indictment restraint and post-conviction forfeiture provisions of the CFA can apply to funds needed to pay legitimate attorney's fees. The panel held, however, that notice and a pre-trial hearing—at which the government has the burden of demonstrating the likelihood that the assets the government seeks to re-

strain are forfeitable—are constitutionally required for the government to restrain assets needed to pay a defendant's counsel of choice. The panel held that where the government fails to meet such a burden any funds used to pay legitimate attorney's fees would be exempt from post-trial forfeiture. 836 F.2d at 84.

The case was remanded and the district court held a hearing as required by the panel opinion. Following the hearing, the district court ruled that the government had met its burden of demonstrating the likelihood that the restrained assets were forfeitable and that the restraining order therefore need not be lifted. Monsanto's trial commenced in February 1988 and is still in progress in the district court. We are told that at trial Monsanto is represented by counsel appointed under the CJA.

In January 1988, this court voted to rehear the appeal in banc, and we heard oral argument on March 30, 1988. As is indicated by the separate concurring opinions, a majority of the members of the in banc court, albeit for varying reasons, agree that the order of the district court denying Monsanto's motion should be vacated and the case remanded with instructions to modify the restraining order to permit Monsanto access to restrained assets to the extent necessary to pay legitimate (that is, non-sham) attorney's fees in connection with the criminal charges against him. A majority of the members of the court also agree that any such fees paid to Monsanto's defense counsel are exempt from subsequent forfeiture pursuant to 21 U.S.C. § 853(c).

The order of the district court is vacated and the matter is remanded to the district court for further proceedings consistent with this opinion.

FEINBERG, Chief Judge, with whom OAKES and KEARSE, Circuit Judges, join, concurring:

I concur in the holding of the court because I believe that the post-indictment restraint and post-conviction "relation back" provisions of the CFA conflict with the right of criminal defendants to select their own counsel. To the extent these provisions prevent an indicted defendant who would otherwise be able to retain counsel of choice from doing so, they are unconstitutional. I do not believe that the hearing envisioned in the panel opinion, 836 F.2d 74, is sufficient to overcome the constitutional infirmities.

The sixth amendment right to counsel of choice is a fundamental right that serves to protect other constitutional rights. It is a key element in our system of criminal justice and distinguishes that system from others that do not allow individuals the chance to resist in a meaningful way the imposition of government power upon them. Therefore, the right to counsel of choice cannot be infringed unless a compelling governmental purpose outweighs it. Many of the cases that allow limitations on the right to counsel of choice deal only with partial limitations or infringements, such as preventing a defendant from substituting counsel once the trial has begun, see, e.g., United States v. Paone, 782 F.2d 386, 392 (2d Cir.), cert. denied, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986), or disqualifying a particular lawyer, see, e.g., United States v. DiTommaso, 817 F.2d 201, 219–20 (2d Cir.1987). In contrast, the right in this case is destroyed almost completely by depriving the defendant of the means to retain counsel of choice prior to the commencement of trial. Therefore, one would suppose that the governmental justification for such drastic action is overwhelmingly persuasive.

The fact is just to the contrary. The suggested governmental interests that are served by restraining, and permitting the ultimate forfeiture of, assets that are needed to pay attorney's fees are not all that compelling. The government's interests are that assets it seeks to obtain not be dissipated in the relatively brief period from indictment to possible conviction and that an alleged criminal not be able to use his economic power obtained from illegal activities. As to the former, the government's claim to the disputed assets at the time of restraint is only conditional, since under the CFA the government's owner-

ship interest in the assets is not determined until the outcome of the criminal prosecution. This is not to say that the government has no claim to these assets at all, but only that the claim is not sufficiently strong to prevent those assets from being spent on an accused's defense when the accused has no other funds available. Moreover, it must be remembered that in this sixth amendment context, the government is not prevented from freezing an indicted defendant's *other* assets—those not necessary for payment of counsel—so that there will be no dissipation or concealment of those.

To the extent that the government seeks to strip an accused of the economic power he obtained from alleged illegal activities, this interest is weak in the context before us. As I have just indicated, defendants' assets generally are a fair target for the government. We are concerned here with only one aspect of economic power, the power to hire an attorney in relation to the criminal prosecution. Of course, weakening the ability of an accused to defend himself at trial is an advantage for the government. But it is not a legitimate government interest that can be used to justify invasion of a constitutional right. Our holding does not allow a criminal to retain his illgotten economic power after conviction. It frees assets only when they are used to pay legitimate attorney's fees and when no other assets are available. It does not allow defendants to shelter untainted assets by paying a lawyer with tainted property first. Thus, if the accused is ultimately convicted, the only assets our holding will have saved from forfeiture are assets that have been spent on defense. Admittedly, the government does have some interest in preventing criminals from using ill-gotten economic power to hire attorneys, but that interest simply does not outweigh an accused's constitutional right to counsel of choice.

The government argues that since *United States v. Salerno,* —— U.S. ——, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), held that a defendant may be detained pending trial, the restraint on a defendant's property here (as opposed to his liberty) must be permissible. The argument seems persuasive at first blush, but on further analysis it is not. *Salerno* stands for the proposition that an accused's liberty interest may sometimes be overcome by the compelling government interest in coping with an immediate threat to public safety. Here there is no government interest anywhere near as compelling as that. Nor is the restraint here on property alone. The restraint affects the right to counsel of choice, which in turn affects important liberty interests.

Therefore, the statute as applied below is unconstitutional. The sixth amendment mandates that the district court, in evaluating a restraining order, permit a defendant access to sufficient funds to pay the legitimate costs of his defense. On remand, the court must permit invasion of the restrained assets to the extent necessary to provide Monsanto with sufficient funds to retain counsel of choice. The government must also be prohibited from later seeking forfeiture of fees paid to Monsanto's counsel of choice. On the facts before us, the "relation back" provision of 21 U.S.C. § 853(c) has the same effect as a restraining order when applied to attorney's fees, since practical considerations will keep an attorney from accepting fees based upon the contingency of success at the criminal trial.

Our holding does permit some who have engaged in criminal activity to obtain a particular attorney solely because they have gained economic power through crime. And, it may be true (although unfortunate) that greater financial power frequently buys the ability to present a stronger and more thorough defense. The small societal cost of allowing criminals to use their illegally obtained wealth to hire an attorney, however, is the price we must pay for protecting the rights of the innocent, who might otherwise be deprived of legitimate economic power in waging a full defense. It is a cost of our adversarial system, which places great value on protecting the rights of the accused. The trouble with the statute, as applied in this case, is that it deprives defendants of their

economic power to hire an attorney before they are proven to be criminals.

It is true, as the dissenting opinion of Judge Mahoney points out, that other circuits, although not without disagreement within the circuit, have held the statute as applied here constitutional. For the reasons set forth above, I respectfully disagree with the reasoning of those opinions.

The government must prove that an accused is guilty beyond a reasonable doubt. It must do this by obtaining convincing evidence of the defendant's guilt, not by preventing the defendant from retaining counsel of choice. As Judge Rubin said concurring in *United States v. Thier*, 801 F.2d 1463, 1477 (5th Cir.1986), modified, 809 F.2d 249 (1987):

> The Government should not be permitted to cripple the defendant at the outset of the [trial] by depriving him of the funds he needs to retain counsel....

I agree.

OAKES, Circuit Judge (concurring):

I concur in the per curiam opinion and in Chief Judge Feinberg's Sixth Amendment opinion so far as it goes. As the dissenter on the original panel, 836 F.2d 74, 85 (2d Cir.1987), I am pleased that the court saw fit to rehear the case en banc and that the majority sees fit to reverse the district court. I write only a few additional words to amplify my views, as set forth in that dissent, that the forfeiture statute is "unconstitutional at least on Sixth Amendment, and possibly on Fifth Amendment due process, grounds." *Id.* at 87.

The Sixth Amendment, in my view, is implicated not only on the individual level of the particular defendant's right to the counsel of his choice, but also on the institutional level of the criminal justice system as a whole. That is, there is a systemic interest in permitting defense counsel to perform their proper role in our adversary system of justice, a role in and of itself worthy of protection. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984); *United States v. Cronic*, 466 U.S. 648, 655–56, 104 S.Ct. 2039, 2044–45, 80 L.Ed.2d 657 (1984); *Herring v. New York*, 422 U.S. 853,

862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975). *See also* Cloud, *Forfeiting Defense Attorneys' Fees: Applying an Institutional Role Theory to Define Individual Constitutional Rights*, 1987 Wis.L.Rev. 1, 8–15; Note, *Against Forfeiture of Attorneys' Fees Under RICO: Protecting the Constitutional Rights of Criminal Defendants*, 61 N.Y.U.L.Rev. 124, 146–48 (1986). By permitting prosecutors to undermine the quality of the defendants' counsel in the very type of complex criminal case (RICO, CCE) where astute, experienced counsel is most needed, the pretrial restraint and post-conviction "relation back" forfeiture provisions as applied to legitimate attorneys' fees deny defendants counsel of choice and a fair trial. These Sixth Amendment considerations are not saved by a pretrial mini-trial such as was had here, for the reasons stated in 836 F.2d at 86–87.

The Fifth Amendment due process clause is also implicated, I now believe, for several reasons. The forfeiture statute puts too much power in the hands of the prosecution to determine who will *not* be defense counsel, power that is particularly pernicious because the present system of providing counsel for the indigent may not provide effective representation in the long, complicated RICO and CCE cases. *See United States v. Thier*, 801 F.2d 1463, 1473 (5th Cir.1986) (Rubin, J., concurring), *modified*, 809 F.2d 249 (5th Cir.1987). The forfeiture provisions infect the system with the unavoidable conflicts of interest and ethical dilemmas for the defense attorney that jeopardize the right to due process. *See United States v. Badalamenti*, 614 F.Supp. 194, 196–97 (S.D.N.Y.1985). *See also* Note, *Attorney Fee Forfeiture*, 86 Colum.L.Rev. 1021, 1030–36 (1986).

In addition, pretrial forfeiture, especially when coupled with pretrial detention, *see United States v. Ojeda Rios*, 846 F.2d 167 (2d Cir.1988), too closely resembles the Alice-in-Wonderland Queen's "sentence first, verdict afterward" mode of justice. The history underlying the adoption of the Fifth Amendment, involving pretrial confinement, no right to counsel, bills of attainder,

and more, *see* L. Levy, *Origins of the Fifth Amendment* (1968), together with the interrelationship of the principles embodied in the Bill of Rights, *see* Oakes, *The Proper Role of the Federal Courts in Enforcing the Bill of Rights*, 54 N.Y.U.L.Rev. 911, 919–24 (1979), persuades me that the Founders would never have countenanced the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853.

A statutory scheme that sacrifices the relationship between client and attorney, that invites the prosecutor to undermine the adversarial process, and that imposes sentence before trial (not to mention that denies a defendant his right to counsel of choice) cannot and must not survive constitutional scrutiny.

WINTER, Circuit Judge, with whom Judges MESKILL and NEWMAN join, concurring:

I believe it unnecessary to address the constitutional issues reached by my colleagues because I conclude that: (i) the statute in question does not permit the pre-conviction restraint of funds needed by a defendant to make ordinary lawful expenditures, including expenditures to retain private legal counsel; and (ii) expenditures expressly authorized by the district court for such purposes are not subject to post-conviction forfeiture.

The relevant provisions of the Comprehensive Forfeiture Act, Pub.L. No. 98–473, 98 Stat. 2040 (1984), are drafted in permissive—"may"—rather than mandatory—"shall"—terms. *See* 18 U.S.C. § 1963(e) (Supp. IV 1986); 21 U.S.C. § 853(e)(1)(A) (Supp. IV 1986). Because of the "may" language and the lack of any evidence of congressional intent to the contrary, I read the Act to vest district courts with the discretionary power to restrain assets identified in an indictment as subject to forfeiture. The exercise of that discretion is to be guided by traditional equitable principles that balance the relative hardships to the parties. The government has no interest derived from the Act in preventing a defendant from making ordinary lawful expenditures during the period from indict-

ment to conviction, including expenditures for the retention of private counsel. Similarly, the forfeiture provisions governing transfers to third parties are also discretionary, 18 U.S.C. § 1963(a)(3) (Supp. IV 1986); 21 U.S.C. § 853(c) (Supp. IV 1986), and at the very least, must exempt from forfeiture any payments authorized by the court under Section 853(e)(1). If that interpretation is correct, the due process and sixth amendment issues need not be addressed. I therefore concur in the judgment of the court. My reasons follow.

I

The so-called restraint provision of the Act, 21 U.S.C. § 853(e)(1) provides in pertinent part:

(e) *Protective orders*

(1) Upon application of the United States, the court *may* enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; ...

(emphasis added).

I am frankly puzzled why a statutory provision with such permissive language has been read by so many courts to authorize as a routine matter, much less require, the most draconian of restraints on a defendant's assets without giving any consideration to the hardship such a restraint imposes. Indeed, the established canon of statutory construction is to favor the retention of full equitable powers by courts absent a clear statement of a contrary legislative intent. Unless Congress "in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction

is to be recognized and applied." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946); *accord, e.g., Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 1402–03, 94 L.Ed.2d 542 (1987); *Brown v. Swann*, 35 U.S. (10 Pet.) 496, 503, 9 L.Ed. 508 (1836) ("The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction."). We thus should not lightly presume that Congress, in enacting the Act, intended to dispense with "the requirements of equity practice" and their "background of several hundred years of history," *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944), a history "of which Congress is assuredly well aware." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982).

Even if Congress had used the word "shall" instead of "may," there is caselaw holding that an exercise of equitable discretion would still be required. For example, the Emergency Price Control Act of 1942 provided that in certain circumstances "a permanent or temporary injunction, restraining order, or other order *shall* be granted without bond." *Brown v. Hecht Co.*, 137 F.2d 689, 690 (D.C.Cir.1943), *rev'd sub nom. Hecht Co. v. Bowles*, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Nevertheless, the Supreme Court concluded "that 'shall be granted' is less mandatory than a literal reading might suggest." 321 U.S. at 328, 64 S.Ct. at 591. The Court noted "that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made." *Id.* at 329, 64 S.Ct. at 591.

In addition, the legislative history of the Act supports the conclusion that courts retain their full equitable powers in issuing orders under Section 853(e)(1). The Senate Report expressly indicates that district courts may hold hearings concerning restraints on a defendant's assets imposed under that Section. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 203, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3374, 3386 ("This provision does not ex-

clude ... the authority to hold a hearing subsequent to the initial entry of the order and the court may modify the order or vacate an order that was clearly improper...."). The legislative history is clear, however, that this hearing is not to inquire into the evidentiary strength or weakness of the government's case on criminality. Immediately after noting that a hearing may be held and "the court may modify the order," the Senate Report states:

> However, it is stressed that at such a hearing the court is not to entertain challenges to the validity of the indictment. For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.

S.Rep. No. 225, at 203, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3386.

It seems almost self-evident that if the purpose of the hearing is not to test the government's evidence of criminality, then its purpose must be to allow an informed balancing of the relative hardships on the parties according to traditional principles of equity with regard to preconviction restraints upon a defendant's assets. For reasons stated below, that balance should be struck so as to allow a defendant to continue to make ordinary lawful expenditures, including expenditures to retain private legal counsel. These expenditures should be controlled, however, to prevent the defendant from making unusual expenditures for luxuries in anticipation of a conviction and forfeiture, from executing sham transfers, and from using assets for criminal purposes. In short, the court may seize the assets of a defendant but should allow controlled ordinary lawful expenditures.

The Act authorizes pre-conviction restraint in order to protect the government's right to a post-conviction forfeiture. In weighing the potential hardship on the government with regard to a pre-conviction restraint on a defendant's assets, therefore, we must scrutinize its interest under the Act in ultimately obtaining a forfeiture

of those assets. Although the Act's relation-back forfeiture provision gives the government a nominal property right in potentially forfeitable assets, this property right is derived solely from the government's interest in crime control. For example, the government expressly disclaimed at oral argument any interest in criminal forfeitures under the Act as a means of raising revenue.[1] The mere fact that the assets ultimately forfeited after conviction may be less than if a total preconviction restraint had been imposed does not, therefore, contravene any purpose of the Act. Cases involving the seizure of property where revenue raising purposes are implicated are thus inapplicable. Similarly, *United States v. Salerno*, — U.S. —, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which upheld a restraint on the person of a defendant, was based on the government's interest in preventing that defendant from committing crimes in the pre-conviction period.

The Act provides for forfeiture only as a penalty designed to eradicate certain criminal organizations and to deter racketeering and narcotics trafficking. As the Senate Report explained:

> Profit is the motivation for this criminal activity, and it is through economic power that it is sustained and grows. More than ten years ago, the Congress recognized in its enactment of statutes specifically addressing organized crime and illegal drugs that the conviction of individual racketeers and drug dealers would be of only limited effectiveness if the economic power bases of criminal organizations or enterprises were left intact, and so included forfeiture authority designed to strip these offenders and organizations of their economic power.

Today, few in the Congress or the law enforcement community fail to recognize that the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs which, with its inevitable attendant violence, is plaguing the country. Clearly, if law enforcement efforts to combat racketeering and drug trafficking are to be successful, they must include an attack on the economic aspects of these crimes. Forfeiture is the mechanism through which such an attack may be made.

S. Rep. No. 225, at 191, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3374 (footnote omitted).

There is nothing in the language or legislative history of the Act indicating that Congress hoped to eradicate criminal organizations or to deter racketeering or narcotics trafficking by imposing financial penalties upon defendants *before* conviction and forfeiture. In the only passage remotely supporting a contrary view, the Senate Report stated that the restraint provision was intended only "to preserve the availability of a defendant's assets for criminal forfeiture and, in those cases in which he does transfer, *deplete,* or conceal his property, to assure that he cannot *as a result* avoid the economic impact of forfeiture." *Id.* at 196, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3379 (emphasis added). The "depletions" with which Congress was concerned were thus only those that enable a defendant to avoid the economic impact of a *post-conviction* forfeiture. Unlike unusual lavish expenditures to accelerate consumption in the pre-trial period, transfers to friends or relatives as a desirable alternative to forfeiture, or transfers for purposes of concealment, ordinary lawful expenditures do not enable a defendant to

---

1. After it obtains a forfeiture verdict, the government of course reaps an economic benefit from forfeited assets by using them to relieve "the financial burden aggressive forfeiture cases place[ ] on our law enforcement agencies." S.Rep. No. 225, at 197, *reprinted in* 1984 U.S. Code Cong. & Admin.News at 3380; *see* 21 U.S. C. § 881(e) (Supp. IV 1986) (providing for sale, destruction or governmental use of forfeited assets). However, as the government's conces-

sion at oral argument suggests, forfeiture is not an efficient way to raise revenue. Indeed, the Senate Report notes that the Act was enacted in part to "defray the escalating costs" of forfeiture, S.Rep. No. 225, at 193, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3376, and Congress hardly enacted the provisions at issue here in order to defray the cost of their application.

avoid the economic impact of a post-conviction forfeiture, because such expenditures would have been made without regard to the prospect of such a forfeiture. A pretrial restraint on ordinary lawful expenditures on the other hand irreparably imposes the economic impact of forfeiture before conviction. Read as a whole, the legislative history indicates only that Congress was concerned about the "improper disposition of forfeitable assets," *id.* at 194, *reprinted in* 1984 U.S.Code Cong. & Admin. News at 3377, "defendants defeating forfeiture by removing, transferring, or concealing their assets," *id.* at 195, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3378, and "shield[ing] them from ... forfeiture." *Id.*[2]

Congress's crime-prevention purposes are thus served by preventing a defendant like Monsanto from making unusual expenditures on luxuries in anticipation of incarceration and forfeiture. They are also served by preventing transfers to friends and relatives in the same anticipation or transfers for purposes of concealment and later use. Finally, the Act's purposes are served by preventing expenditures for criminal purposes during the pre-conviction period. Preventing ordinary lawful expenditures, however, does not serve any purpose of the Act and would constitute a punishment imposed *before* conviction and forfeiture.[3]

Because a pre-conviction restraint on ordinary lawful expenditures is a punishment, hardship is inflicted on a defendant to the extent of the restraint. In this case, the effect of the restraint was to render Monsanto indigent. It contained no provision for access to assets for food, medical care or legal counsel. If he were a lessee instead of a homeowner, he would now lack funds for shelter.[4] Given the absence of a countervailing governmental interest, it is an abuse of discretion not to acknowledge the priority of a defendant's interest in making ordinary lawful expenditures, including those necessary to retain private counsel. The actual making of expenditures, of course, can be directly controlled by the district court to insure that they are for permissible purposes.

It should be noted that on this point our difference with the dissent appears to be quite narrow. The dissent agrees that the CFA permits payments to grocers or doctors, and presumably to other purveyors of legitimate and ordinary goods and services, out of restrained assets. Our difference is thus limited to payments for counsel fees. With regard to that difference, we add the following. First, if courts retain their traditional equity powers regarding the scope of pre-trial restraints, there is no reason in the law of equity to distinguish between medical care and legal counsel. So far as cost is concerned, a surgeon of one's choice

2. The dissent quotes at length a portion of the House Report concerning the so-called "Black Tuna" case. The portions italicized by the dissent read in isolation support its position. Read as a whole, the quoted statement simply does not state that either the counsel fees, if legitimate, would be subject to forfeiture. In fact, the statement equates counsel fees with amounts paid to a wife who was apparently a co-owner of the residence. No one has suggested that a co-owner's share of an asset may be forfeited. The only policy concern expressed in the statement is that "a considerable amount of the 'proceeds' of this drug operation are elsewhere, probably funding future 'Black Tunas.'"

3. It is arguable that a purpose of restraining, prior to conviction, assets that would otherwise have been spent for normal living expenses, including ordinary legal fees, is to deter engaging in activities that yield forfeitable proceeds. That purpose cannot warrant the exercise of

discretion to restrain assets needed for ordinary living expenses for three reasons: (1) Congress has given no indication that it wishes to achieve such a purpose by this means; (2) preventing purchase of ordinary goods and services prior to trial has an insignificant marginal deterrent effect compared to the prospect of substantial prison sentences, and any such enhanced deterrence is manifestly outweighed by the equities favoring the defendant's purchase of ordinary goods and services; and (3) assertion of such a purpose would encounter a substantial due process issue as to whether preventing such purchases in order to deter crime amounts to punishment in advance of conviction.

4. Logically, the position that all assets identified as tainted may be seized before trial would entail seizure of a home, rather than a prohibition on encumbrances, so that the rental value might be preserved for ultimate forfeiture instead of being consumed by the defendant.

may be as expensive as a lawyer of one's choice. So far as hardship is concerned, defendants subject to a pre-trial restraint on all assets can turn to government programs providing medical care or legal counsel to the indigent. Moreover, payments for legal counsel implicate a constitutional provision providing protection for the retention of private counsel, and it can hardly be contended that equity disfavors the use of private funds for that purpose.

Second, there is nothing in the CFA that exempts attorney's fees from the exercise of traditional equity powers. This point is best illustrated by comparing the dissent's interpretation of the statute with that of the panel majority. The panel opinion noted that "the plain language of the statute is categorical and contains no exception for attorney's fees." 836 F.2d at 78. It quoted the statutory language, "Any person ... shall forfeit ... *any* property," *id.* (emphasis in panel opinion), and observed that the only exception to this all-encompassing language concerned bona fide purchasers. *Id.* at 79. It stated that on the face of the statutory language a bona fide purchaser meant simply a purchaser without notice that the property might be subject to forfeiture. The panel next turned to various general statements in the legislative history relied upon by appellant as limiting third-party forfeitures to sham transactions. The panel concluded that the legislative history was "thoroughly ambiguous" and "certainly not clear enough to warrant departure from the plain meaning of the statute." *Id.* at 80. Legitimate counsel fees paid to lawyers with notice might therefore be forfeited.

The dissent's reasoning is at odds with that of the panel because the dissent allows for payments to a considerable variety of providers of legitimate and ordinary goods and services who may have notice that the payments are from assets otherwise subject to forfeiture. The dissent thus does not contemplate, as did the panel, a complete restraint on *"any* property" from which an exception for attorney's fees would have to be judicially implied. Instead, the dissent contemplates an exemption from restraint and forfeiture of a variety of legitimate and ordinary expenditures to persons with notice of the possibility of forfeiture. The dissent then implies an exception to those permissible expenditures barring payments for legitimate attorney's fees. Our position is that if Congress intended to allow courts in the exercise of traditional equity powers to authorize expenditures from otherwise restrained assets, Congress's failure to include a provision expressly disallowing payments for counsel fees calls into play the plain meaning rule relied upon by the panel.

I believe that a straightforward application of standard principles of statutory construction requires this interpretation of Section 853(e)(1) even in the absence of the far-reaching constitutional issues a different reading of the statute encounters. However, if anything remains of the canon that statutes capable of differing interpretations should be construed to avoid constitutional issues, *see Kent v. Dulles,* 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), it surely applies here.

## II

I turn now to whether bona fide payments for ordinary lawful expenditures, including attorneys' fees, made pursuant to a district court's exercise of equitable discretion under Section 853(e)(1),[5] may nevertheless be subject to post-conviction forfeiture. The forfeiture provision, Section 853(a), provides in pertinent part:

(a) *Property subject to criminal forfeiture*

*Any person convicted* of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year *shall* forfeit to the United States, irrespective of any provision of State law—

---

5. Because the restraining order rendered Monsanto indigent, the question of the forfeiture of assets that were *not* the subject of a Section 853(e)(1) proceeding appears not to be before us. I do note, however, that the government stated at oral argument that it will not seek forfeiture of such assets.

(1) *any* property constituting, or derived from, *any* proceeds the person obtained, directly or indirectly, as the result of such violation;

\* \* \* \* \* \*

21 U.S.C. § 853(a)(1) (emphasis added). With regard to transfers of forfeitable assets, the statute provides:

(c) *Third party transfers*

All right, title and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant *may* be the subject of a special verdict of forfeiture and *thereafter shall* be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

*Id.* § 853(c) (emphasis added).

Again, for the reasons set out at some length with regard to Section 853(e)(1), I would construe the word "may" to vest the district court with equitable discretion in imposing a forfeiture. Having read Section 853(e)(1) to require the exercise of discretion, Section 853(c) must be interpreted *in pari materia.* Otherwise, it would essentially nullify the district court's equitable authority to permit defendants to make ordinary lawful expenditures under Section 853(e)(1). For example, one can hardly imagine that any defense lawyer will be able to show that he or she "was reasonably without cause to believe that the property was subject to forfeiture...." 21 U.S.C. § 853(c). As Judge Leval has explained:

No one is more on notice of likelihood that the [tainted] money may come from ... prohibited activity than the lawyer who is asked to represent the defendant in the trial of the indictment. If the statute applies to him, its message to him is "Do not represent this defendant or you will lose your fee." That being the kind of message lawyers are likely to take seriously, the defendant will find it difficult or impossible to secure representation.

*United States v. Badalamenti,* 614 F.Supp. 194, 196 (S.D.N.Y.1985). Other potential providers of essential services may also be deterred from engaging in transactions with a highly publicized defendant. A surgeon or grocer who knows that a patient or customer is under indictment for narcotics trafficking may well have "reasonable cause" to believe that his fees are being paid with tainted assets. *Cf. id.* If the district court's equitable authority to permit ordinary lawful expenditures is to be effective, payments to third parties made pursuant to that authority must be immunized from post-conviction forfeiture.

In any event, this construction is more consistent with the language of the statute than any other. The phrase *"may* be the subject of a special verdict of forfeiture" in Section 853(c) should be read to authorize the district court to exempt certain assets from post-conviction forfeiture in order to vindicate the court's authority under Section 853(e) or otherwise to prevent injustices to third parties. This construction in no way nullifies the phrase *"thereafter shall* be ordered forfeited" in Section 853(c). That simply means that forfeiture of third-party assets becomes mandatory only *after* the "special verdict of forfeiture" as to those assets has been returned. Nor does this reading of Section 853(c) defeat the mandatory language of Section 853(a), which by its terms applies only to "any person convicted" of the referenced crimes.

Accordingly, once a district court concludes that controlled expenditures may be made from assets otherwise restrained under Section 853(e)(1), those expenditures must be exempt from subsequent forfeiture under Section 853(c). Again, this interpretation is justified by traditional principles of statutory construction without regard to whether a different construction would implicate constitutional issues. Because a different construction would raise

such issues by deterring surgeons, grocers, and lawyers from selling ordinary services and products to a defendant, however, a further reason for adopting my construction of the statute exists.

I therefore concur in the judgment of the court.

MINER, Circuit Judge, with whom ALTIMARI, Circuit Judge, joins, concurring in part and dissenting in part:

While I agree with the panel majority that a post-indictment restraining order cannot be issued without the notice and hearing constitutionally required as a matter of fifth amendment due process, 836 F.2d 74, 83 (2d Cir.1987), I hold the opinion that the procedural safeguards necessary to satisfy due process requirements here must be established by Congress rather than by this Court.

The provision for a pre-indictment restraining order, 21 U.S.C. § 853(e)(1)(B), stands in sharp contrast to the provision for a post-indictment restraining order, *id.* § 853(e)(1)(A). While the former requires notice and hearing prior to issuance of the order, the latter does not. That Congress intended to maintain this distinction is apparent from the legislative history: "[T]he probable cause established in the indictment ... is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based." S.Rep. No. 225, 98th Cong., 2d Sess. 203, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3386. Expressly rejected, according to the Senate Report, was the holding in *United States v. Crozier,* 674 F.2d 1293 (9th Cir.1982), *vacated,* 468 U.S. 1206 (1984), which requires the government to satisfy the standards of Fed.R.Civ.P. 65 in order to obtain a post-indictment restraining order. S.Rep. No. 225, *supra,* at 195–196 & n. 20, 1984 U.S. Code Cong. & Admin. News at 3378–79 & n. 20.

The forfeiture statute is defective in failing to provide for notice and hearing at least *following* the issuance of a restraining order in the post-indictment context.

The Supreme Court has held that an *in rem* seizure of a yacht carrying illegal narcotics is permissible on an *ex parte* application, in light of the significant governmental interest involved, *provided* that a post-seizure hearing is conducted. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). I see no difference between "seizure" and "restraint," since both deprive an owner of access to or use of his property. The same fifth amendment constraints should apply in either case.

It seems to me, however, that the hearing procedure established in such great detail by the panel majority is beyond our power to create. It simply is not our place, in the face of contrary congressional intent, to provide for a hearing and to spell out the process that is due. Such specific procedural matters as the burden of proof are better left for legislative determination after a finding of unconstitutionality. "The nature and form of such ... hearings ... are legitimately open to many potential variations and are a subject, at this point, for legislation—not adjudication." *Fuentes v. Shevin,* 407 U.S. 67, 96–97, 92 S.Ct. 1983, 2002–2003, 32 L.Ed.2d 556 (1972). In this case, the panel majority not only has added an entire procedure that Congress specifically has rejected; it also has eliminated something that Congress specifically provided for by deciding that there can be no post-trial forfeiture of attorney's fees if the restraining order is lifted.

Having relied on the fifth amendment to declare the post-indictment restraint provision unconstitutional for failure to require notice and hearing, I do not consider the issue of post-conviction fee forfeiture ripe for review. There is nothing in the record to indicate that no lawyer would take the case if he were paid at its inception with funds subject to *possible* forfeiture after conviction. Monsanto's problem is that he could not retain counsel of his choice after his assets were restrained. Whether he could have done so if the funds had been available to him in the first instance is not the case before us.

I therefore concur in the *per curiam* opinion to vacate the restraining order so as to permit Monsanto access to the restrained assets to the extent necessary to pay legitimate attorneys' fees for the defense of the pending criminal charges. I decline to join in the declaration that such fees shall be exempt from post-conviction forfeiture under the provisions of 21 U.S.C. § 853(c).

MAHONEY, Circuit Judge, with whom Judges CARDAMONE and PIERCE join except as to Section D of this opinion, dissenting:

I respectfully dissent, and would decide the in banc appeal in accordance with the majority opinion in the original panel determination reported at 836 F.2d 74 (2d Cir. 1987), familiarity with which is assumed. The case is here on appeal from denial of a motion to vacate or modify a post-indictment restraining order (1) to permit appellant Peter Monsanto to use restrained assets to retain private trial counsel, and (2) to exempt legal fees paid to such counsel from post-trial forfeiture.

The panel majority read the pertinent statute, 21 U.S.C. § 853(a) through (e) (Supp. IV 1986), enacted as part of the Comprehensive Forfeiture Act of 1984 ("CFA"), to authorize restraining orders which would freeze assets needed to pay a defendant's counsel of choice, and concluded that this resulted in no constitutional violation so long as a pre-trial adversarial hearing was provided at which the government established, "by evidence independent of the indictment, a probability of convincing a jury beyond a reasonable doubt both that the defendant has violated the statute and that the assets are subject to forfeiture." *United States v. Monsanto*, 836 F.2d 74, 83 (2d Cir.1987) (citations omitted).[1] The majority further ruled that if the government failed to prevail at the pre-trial hearing, the assets in question would not be subject to recapture after payment to counsel as legal fees, whatever the outcome of the trial. The hearing mandated by the panel majority was conducted on remand, the government prevailed, and Peter Monsanto is now on trial with his sixteen codefendants, all of whom (including Monsanto) are represented by counsel appointed pursuant to 18 U.S.C. § 3006A (Supp. IV 1986).

The in banc majority now concludes in a per curiam opinion that the panel majority erred, and that Monsanto was entitled to pay counsel of choice from the restrained assets. No majority unites behind a single rationale supporting that result. Rather, there are varying combinations of votes for four concurring opinions. These opinions conclude that the statute requires this result (concurring opinion of Judge Winter), the sixth amendment requires it (concurring opinion of Chief Judge Feinberg), both the fifth and sixth amendments require it (concurring opinion of Judge Oakes), and finally, that the panel majority exceeded its authority by adding a hearing requirement to the statute, although if the statute called for a hearing it would pass constitutional muster (concurring opinion of Judge Miner). These opinions, and the issues they raise, will be considered seriatim.

A. *The Statutory Issue (concurring opinion of Judge Winter).*

The issue whether 21 U.S.C. 853 (Supp. IV 1986) authorizes an exemption from pre-trial freeze orders of sufficient assets to pay for counsel of choice has been considered by a number of circuit courts. Although they have divided on the constitutional issue, these courts have unanimously decided, with one exception that is now under in banc review, that the statute cannot be read to reach that result.

The Fourth Circuit so ruled in *In Re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637 (4th Cir.1988) (in banc). *See id.* at 641–42; *id.* at 651 (Phillips, J.,

---

1. Although the requirement of proof beyond a reasonable doubt as to forfeitability of assets is the majority rule, we note that *United States v. Sandini*, 816 F.2d 869, 874–75 (3d Cir.1987), requires only proof by a preponderance of the evidence, relying in part on our ruling in *United States v. Grammatikos*, 633 F.2d 1013, 1025 (2d Cir.1980), that forfeiture is not an element of the criminal offense, but simply an additional penalty therefor.

dissenting). The Tenth Circuit so ruled in *United States v. Nichols*, 841 F.2d 1485 (10th Cir.1988). *See id.* at 1491–96; *id.* at 1509 (Logan, J., dissenting). The panel opinion in this circuit, *United States v. Monsanto*, 836 F.2d 74 (2d Cir.1987), was unanimous on this point. *See id.* at 78–80; *id.* at 85–86 (Oakes, J., dissenting). The Fifth Circuit ruled in *United States v. Thier*, 801 F.2d 1463 (5th Cir.1986), *modified*, 809 F.2d 249 (5th Cir.1987), that the statute should be read to authorize, although not mandate, an exemption for attorney's fees, and this ruling was reaffirmed in *United States v. Jones*, 837 F.2d 1332 (5th Cir. 1988). One judge concurred in *Jones*, however, only because constrained by *Thier*, and expressed his preference for the contrary rule of the Second and Fourth Circuits. *Id.* at 1336 (Davis, J., concurring). The Fifth Circuit has since decided to reconsider *Jones* in banc. *United States v. Jones*, 844 F.2d 215 (5th Cir.1988).

Most of the analyses in these cases have been directed to subdivisions (a) and (c) of 21 U.S.C. § 853 (Supp. IV 1986), and have concluded that since subdivision (a) extends to "any property" obtained from or used for criminal violations, and since subdivision (c) calls for recapture of such property from all transferees except bona fide purchasers, a category unlikely to include defense counsel who would presumably be on notice concerning any government claims as to forfeiture, the statute does not authorize an exemption for attorney's fees. *See, e.g., In Re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d at 641–42. Judge Winter, however, directs his attention exclusively to subdivision (e)(1)(A) of this section, which provides:

> Upon application of the United States, the court *may* enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action *to preserve the availability of property described in subsection (a) of this section for forfeiture under this section*—
>
> A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be

ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section. . . .

21 U.S.C. § 853(e)(1)(A) (Supp. IV 1986) (emphasis added).

Judge Winter's analysis is that: (1) the use of the word "may" in this subdivision vests discretion in a court from which a restraining order is sought under this section; (2) that discretion is to be guided by traditional equitable principles that balance the relative hardship to the parties; and (3) a review of the legislative history establishes that "[t]he government has no interest derived from the [Comprehensive Forfeiture] Act in preventing a defendant from making ordinary lawful expenditures during the period from indictment to conviction, including expenditures for the retention of private counsel." In reaching this conclusion, Judge Winter's opinion includes no citation of or reference to any of the many cases that have construed this statute, excepting only a confession that he is "frankly puzzled" that none of them has read the statute as he does.

To begin with, it is obviously appropriate, before consulting the legislative history, to look to the language of subdivision (e)(1)(A) to ascertain its purpose. *See, e.g., Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 298, 78 L.Ed.2d 17 (1983). All of the options which a court "may" pursue pursuant to that provision are directed by its unambiguous language to one express purpose: "to preserve the availability of property described in subsection (a) of this section for forfeiture under this section." 21 U.S.C. § 853(e)(1) (Supp. IV 1986). It is accordingly beyond dispute that *any* transfer to a third party of property otherwise subject to a restraining order frustrates, to the precise extent of the property transferred, the expressly stated statutory purpose. It also follows that, however one balances the competing statutory and other interests, it is a transparently wrong reading of the statute to conclude, as Judge Winter does, that the government has "no interest derived from the [Comprehensive Forfei-

ture] Act" in preventing such transfers, or that "[t]he mere fact that the assets ultimately forfeited after conviction may be less than if a total pre-conviction restraint had been imposed does not ... contravene any purpose of the Act."

The legislative history of the statute is equally clear as to its purpose. For example, the pertinent Senate report states that: "The *sole purpose* of the bill's restraining order provision, like that in the current RICO and CCE statutes, is to preserve the status quo, *i.e.*, to assure the availability of the property pending disposition of the criminal case." S.Rep. No. 225, 98th Cong., 1st Sess. 204, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3387 (emphasis added) (hereinafter "Senate Report"). The overall statutory purpose is described in these terms: "both to preserve the availability of a defendant's assets for criminal forfeiture *and,* in those cases in which he does transfer, deplete, or conceal his property, to assure that he cannot as a result avoid the economic impact of forfeiture." Senate Report 196. Judge Winter, however, completely disregards the first of these two passages (*i.e.*, Senate Report 204), thus enabling him to characterize the second (Senate Report 196) (emphasis added) as the *"only* passage [in the legislative history] remotely supporting a ... view" (emphasis added) contrary to his concerning the statutory purpose. I would suggest, however, that in addition to the quite clear meaning of the foregoing passages from the legislative history and the statutory language, the following quotation from the primary report of the House of Representatives concerning the CFA severely undermines the notion that Congress was concerned only with those asset depletions that, as Judge Winter puts it, "enable a defendant to avoid the economic impact of a *post-conviction* forfeiture" (emphasis in original):

One highly publicized case, although anecdotal, is illustrative of the problem. That case was *United States v. Meinster* et al. (Case No. 79–105–CR–JKL, Southern District of Florida). In this prosecution, commonly called the "Black Tuna" case, a Florida based criminal organiza-

tion had imported over a million pounds of marijuana and grossed about $300 million over a 16–month period. The Federal Government completed a successful prosecution in which the three primary defendants were convicted and this major drug operation was aborted. However, forfeiture was attempted on only two residents [sic] worth $750,000, an auto auction business used as a "front" and five yachts.

Of the $750,000 for the residences, $175,000 was returned to the wife of one of the defendants, *and $559,000 was used to pay the defendant's attorneys.* The auto auction business was worthless and the five yachts were never found.

*The Government wound up with $16,-000.*

This was an organization that lived in the "fast lane" of privately owned jets, half million dollar yachts and $60,000 in restaurant bills. Although there are many interrelated reasons for the Government's lack of success on the economic level, it is obvious that a considerable amount of the "proceeds" of this drug operation are elsewhere, probably funding future "Black Tunas."

*It is against this background that present Federal forfeiture procedures are tested and found wanting.*

H.R.Rep. No. 845, Part 1, 98th Cong., 2d Sess. 3 (1984) (emphasis added).

I have no quarrel with Judge Winter's conclusion that the use of the word "may" in 21 U.S.C. § 853(e)(1)(A) (Supp. IV 1986) brings a trial court's traditional equity powers into play. These powers are to be exercised, however, in the context provided by the statute as Congress wrote it. It is one thing to conclude that a district court might, in a given case, allow the invasion of restrained assets to pay a grocer's bill, or provide emergency surgery. It is quite another to conclude that the statute authorizes the rather massive financial outlays often necessary to pay private defense counsel in RICO and CCE prosecutions, and precludes any exercise of a judge's

discretion ever to inhibit such a payment, so long as it is not "sham." [2]

In sum, it is hardly a credible reading of the congressional purpose, given the explicit statutory language and clear legislative history, to conclude that Congress was entirely indifferent to, or intended to create a special exemption for, the use of restrainable assets for attorney's fees. Rather, as most of the circuit courts that have considered the matter have concluded, the statutory issue is not fairly in doubt. This brings us to the question of constitutionality.

B. *The Constitutional Issue (concurring opinions of Chief Judge Feinberg and Judge Oakes).*

The rationale of the panel majority concerning the constitutional issue was expressed as follows:

> Requiring an adversarial hearing, at which the government has the burden to demonstrate the likelihood that the assets are forfeitable, will provide a procedural check against the government's discretion to limit CCE and RICO defendants' choice of counsel simply by obtaining a forfeiture charge in the indictment. If the government cannot demonstrate the likelihood that a jury would find the assets to be the proceeds of crime, the interest of the defendant in using the property to retain counsel of choice should prevail....
>
> In the event the district court finds that the government has not met its burden and lifts the restraining order, moreover, we think the district court should also order that any funds thereafter used to pay legitimate attorney's fees be exempt from any future post-trial forfeiture.... At the pre-trial stage, where the defendant is presumed innocent, we hold that if the government cannot make

a sufficient showing to justify a restraining order, the defendant should not have to bear the risk that private counsel will still be deterred by the prospect of disgorging attorney's fees after trial. To the extent that some funds ultimately found to be forfeitable at trial will remain in the hands of attorneys, we view this as a necessary cost in this difficult balance between the interests of the government and defendant's sixth amendment right to counsel of choice.

> On the other hand, if the government meets its burden at the hearing, we conclude that the defendant has no sixth amendment right to exemption of assets earmarked for attorney's fees either from pre-trial restraint or from post-conviction forfeiture. Once the government has established a likelihood that the assets are indeed forfeitable, the case is more analogous to the situation in which a defendant is denied access to contraband that is manifestly subject to the interest of someone other than the accused. The right to retain private counsel of choice is not absolute; and, in the event that the defendant does not prevail at a post-restraint hearing, he is still guaranteed appointed counsel under the sixth amendment. We see no constitutional principle requiring that a defendant whose ability to pay private counsel results solely from the possession of property which he has acquired by criminal activity, which property Congress has declared to be forfeitable, must be placed in a position preferable to that of an indigent defendant who does not have such property at his disposal.

836 F.2d at 84–85 (footnote omitted).

The trial in which Peter Monsanto is presently engaged is a stark illustration of this rationale. There are seventeen defendants in that trial, *all* of whom (including Monsanto) have appointed counsel. The

---

2. Judge Winter reads the paragraph to which this footnote is appended as (a) a major departure from the original panel opinion, 836 F.2d 74 (2d Cir.1987), and (b) significantly narrowing the differences between our views. I respectfully disagree. As to (a), the panel opinion did not address the individualized discretion authorized by the use of the word "may" in 21 U.S.C.

§ 853(e)(1)(A) because it was deemed irrelevant to Monsanto's wholly unparticularized contention that, either as a matter of statutory construction or constitutional right, *any* defendant must *always* be allowed to use otherwise restrainable assets for non-sham attorney's fees. As to (b), Judge Winter accepts Monsanto's position as thus stated, and I reject it.

opinions of Chief Judge Feinberg and Judge Oakes hold, although they don't put it exactly this way, that representation of Monsanto's sixteen codefendants by appointed counsel poses no constitutional problem, but that the constitution cannot countenance the restraint of assets which Monsanto wants to spend for private counsel, even though the indictment returned by the grand jury charges that those assets are forfeitable under the CFA because derived from illegal drug dealing, and Judge Ward found it probable, after an adversarial pre-trial hearing, that the government would prove this beyond a reasonable doubt.

I view the situation as does the Fourth Circuit:

> We ... decline ... to accord this class of criminal defendants a unique and favored constitutional status. Such a rule would constitutionally prefer the drug merchant with none but illicit assets not only to indigent defendants but to defendants with untainted assets, who must sacrifice them to secure the counsel of their choice.

*In Re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637, 646 (4th Cir.1988) (in banc).

Or as the Tenth Circuit put it:

> It is hard to conceive of a legal system in which appointed counsel is routinely adequate in a death penalty case, but is somehow inadequate in a case involving 'the career criminal millionaire who purchases cars, businesses, and real estate with cash delivered to banks in suitcases.' [*Forfeiture of Narcotics Proceeds: Hearings Before the Subcomm. on Criminal Justice of the Senate Comm. on the Judiciary*, 96th Cong., 2d Sess 1 (1980)] (statement of Sen. Biden).

*United States v. Nichols*, 841 F.2d 1485, 1507 (10th Cir.1988).

Especially in view of these subsequent decisions, I see no reason to depart from the conclusion of the panel majority that the "freeze" provisions of the CFA are constitutional, provided that an appropriate pre-trial hearing is required with respect to the assets sought to be restrained. Accordingly, I next consider Judge Miner's concurring opinion, which holds that the panel majority exceeded its authority in requiring such a hearing.

C. *The Requirement of a Hearing (concurring opinion of Judge Miner).*

Judge Miner "agree[s] with the panel majority that a post-indictment restraining order cannot be issued without the notice and hearing required as a matter of fifth amendment due process, ... [but] hold[s] the opinion that the procedural safeguards necessary to satisfy due process requirements here must be established by Congress rather than by this Court." Here again, Judge Miner does not acknowledge in any way the decisions in other circuits which, faced with the identical question, have required a pre-trial hearing as a matter of due process, *see United States v. Harvey*, 814 F.2d 905, 928–29 (4th Cir. 1987), *rev'd sub nom. In Re Forfeiture Hearing as to Caplin and Drysdale*, 837 F.2d 637 (4th Cir.1988) (in banc); *United States v. Crozier*, 777 F.2d 1376, 1382–84 (9th Cir.1985); *United States v. Lewis*, 759 F.2d 1316, 1324–25 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985); *United States v. Spilotro*, 680 F.2d 612, 616–19 (9th Cir.1982); *United States v. Long*, 654 F.2d 911, 915–16 (3d Cir.1981), or of statutory interpretation, *see United States v. Thier*, 801 F.2d 1463, 1466–70 (5th Cir.1986), *modified*, 809 F.2d 249 (5th Cir.1987).

It is perfectly clear, furthermore, that the hearing required by the *Monsanto* panel majority is not in conflict with the statute. Section 853(e)(1)(A) provides that a court "may" enter a restraining order or injunction, or require a bond, or take other action to preserve the property. If the court "may" take such action, then presumably, as Judge Winter stresses, it also "may" decide not to take such action. Since the court is thus charged with the duty of exercising its discretion one way or the other, it must inherently have the authority to obtain sufficient information to exercise that discretion wisely. Both logically and traditionally, when a court needs

information it holds a hearing. As a matter of fact, the legislative history quoted by Judge Miner, two sentences prior to the sentence he quotes, states that "[t]his provision [21 U.S.C. § 853(e)(1)(A)] does not exclude ... the authority to hold a hearing subsequent to the initial entry of the order...." Senate Report 203.

The "stark contrast" which Judge Miner discerns between the provision for a pre-indictment restraining order, 21 U.S.C. § 853(e)(1)(B), which requires a hearing, and the provision for a post-indictment restraining order, 21 U.S.C. § 853(e)(1)(A), which does not, is easily explained. The authorization of pre-indictment restraining orders was sufficiently novel to call for a specific description of the hearing process needed, a description that was not necessary for the more familiar situation of obtaining a preliminary injunction in a proceeding that was already pending. In any event, there is no need for speculation, since the legislative history quoted above unequivocally establishes that Congress did not, in enacting these provisions, exclude a district court's normal and traditional authority to hold a hearing with respect to a post-indictment restraining order. Furthermore, a prior decision of this court explicitly recognizes that such hearings are not only authorized, but will routinely and normally occur. *See United States v. Gelb*, 826 F.2d 1175, 1176–77 (2d Cir.1987) (per curiam).

Judge Miner points to the rejection, at Senate Report 196 n. 20, of *United States v. Crozier*, 674 F.2d 1293 (9th Cir.1982), *vacated*, 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984), as supportive of his position. *Crozier* was rejected, however, because the rule stated in that case would "allow the courts to entertain challenges to the validity of the indictment, and require the government to put on its witnesses well in advance of trial...." Senate Report 196.

The panel majority opinion addressed the problem of premature disclosure of witnesses by holding that a district court would not be bound by the Federal Rules of Evidence, and could thus admit hearsay,

at a post-indictment, pre-trial adversary hearing to continue a restraint on assets. *United States v. Monsanto*, 836 F.2d at 85; *see also* 21 U.S.C. § 853(e)(3) (Supp. IV 1986). The panel majority also concluded, however, that "challenges to the validity of the indictment" were appropriate, holding that due process required the government to establish at a pre-trial hearing, "by evidence independent of the indictment, a probability of convincing a jury beyond a reasonable doubt both that the defendant has violated the statute and the assets are subject to forfeiture...." *United States v. Monsanto*, 836 F.2d at 83.

It is thus clear that the *Monsanto* panel majority did not impose a hearing requirement that is at odds with the Congressional mandate. Rather, it provided for a hearing which the statute and the pertinent legislative history clearly envisioned, as the Second Circuit has previously recognized, but rejected only the indications in the legislative history that at such a post-indictment hearing, a court must accept the indictment as "determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based." *See* Senate Report 203.

This was clearly an appropriate, indeed obvious, exercise of the normal judicial function, as the five other circuits to consider the matter have concluded. This is especially the case since the repudiation in the Senate Report of *United States v. Crozier*, a case which required a pre-trial hearing as a matter of fifth amendment due process, *see* 674 F.2d at 1297, does not address the sixth amendment issue on which the panel majority ruled here, *see United States v. Monsanto*, 836 F.2d at 82 n. 7, and the legislative history clearly evidences a congressional intent to leave the resolution of the sixth amendment issue to the courts. *See* H.R.Rep. No. 845, Part 1, 98th Cong., 2d Sess. 19 n. 1 (1984).

Judge Miner relies on *Fuentes v. Shevin*, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 2002–03, 32 L.Ed.2d 556 (1972), to reach a contrary conclusion. That case held that the Supreme Court would not, in the first instance, legislate broad new hearing procedures for the replevin statutes of Florida and Pennsylvania. It hardly precludes the

application of normal due process standards by the federal courts to pre-trial hearings, which Congress specifically authorized and envisioned, in the course of federal criminal litigation.

### D. *Post-trial Forfeiture.*

Since the motion whose denial is on appeal sought both permission for Monsanto to use the restrained assets to retain private legal counsel, and exemption of legal fees paid to that counsel from post-trial forfeiture, I would reach the latter question and rule, as did the panel majority, that such exemption is appropriate as to assets which are the subject of a pre-trial hearing at which the government does not prevail. Permitting post-trial forfeiture of attorney's fees would have the effect of discouraging attorneys from representing RICO and CCE clients in the first place, and thus would threaten to deny such defendants counsel of their choice regardless of the outcome of the pre-trial hearing. This rule, of course, stops well short of the per curiam ruling that Monsanto is to be provided access to the restrained assets to whatever extent is necessary to pay nonsham legal fees, and that assets so used are exempt from subsequent forfeiture.

### E. *Conclusion.*

I would be less than candid if I failed to express my disappointment that, except for a passing reference by Chief Judge Feinberg, the concurring opinions of my colleagues never address, or even acknowledge, directly pertinent cases from our sister circuits which reach contrary results on the precise issues considered here. We are, of course, free to go our own way. But it would seem to me that the considered views of other circuits are at least entitled to our respectful consideration. As was stated in *Keasler v. United States,* 766 F.2d 1227 (8th Cir.1985):

> "Although we are not bound by another circuit's decision, we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value. As an appellate court, we strive to maintain uniformity in the law among our circuits, whenever reasoned analysis will allow."

*Id.* at 1233 (quoting *Aldens, Inc. v. Miller,* 610 F.2d 538, 541 (8th Cir.1979), *cert.* denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed. 2d 273 (1980)). *See also Am. Medical Int'l, Inc. v. Secretary of HEW,* 677 F.2d 118, 123 (D.C.Cir.1981); *Fed. Life Ins. Co. v. United States,* 527 F.2d 1096, 1098–99 (7th Cir.1975); and *Cosentino v. Local 28, Int'l Org. of Masters, Mates and Pilots, AFL–CIO,* 268 F.2d 648, 652 (8th Cir.1959).

I stress that no special or individualized circumstances are presented for our consideration on this appeal. Rather, we are asked to provide a blanket rule exempting from forfeiture all assets required for nonsham counsel fees. Because I find all of the concurring opinions which reach that result unpersuasive and, in their virtually total disregard of every pertinent opinion from our sister circuits, surprisingly insular, I respectfully dissent.

PIERCE, Circuit Judge, with whom Judge CARDAMONE joins, concurring in part and dissenting in part:

For substantially the reasons set forth in the original panel opinion in *United States v. Monsanto,* 836 F.2d 74 (2d Cir.1987), and in all but Section D of Judge Mahoney's separate opinion herein, I would hold (1) that 21 U.S.C. § 853(e)(1)(A) (Supp. IV 1986) authorizes the post-indictment, pretrial restraint of assets that otherwise would be utilized to retain an attorney; (2) that such a restraint violates the defendant's qualified sixth amendment right to counsel of choice, unless at a pretrial adversarial hearing the government establishes, "by evidence independent of the indictment, a probability of convincing a jury beyond a reasonable doubt both that the defendant has violated the statute and that the assets are subject to forfeiture," *Monsanto,* 836 F.2d at 83; and (3) that the district court has the authority to hold the requisite pretrial hearing. Accordingly, I respectfully dissent from the per curiam opinion to the extent that it remands this matter with instructions that the district court release whatever funds are necessary for Monsanto to retain counsel of choice. I believe that the original panel majority was correct to remand with instructions that the district court conduct an appropriate

pretrial hearing "at which the government will have the burden of establishing the probability that Monsanto will be convicted at trial and the ... properties in question will be subject to forfeiture." *Id.* at 85.

I concur in the per curiam opinion, however, to the extent that it exempts from post-conviction forfeiture any bona fide fees actually paid to Monsanto's counsel. I agree with the original panel majority's observation that "the *threat* of post-conviction third party forfeiture ... may effectively prevent a defendant from being able to retain counsel of choice." *Id.* at 84 (emphasis in original). I would therefore exempt from post-conviction forfeiture any assets that have not been the subject of a valid pretrial restraining order and that have been used to pay bona fide legal fees; to hold otherwise would provide the government with the ability to limit a defendant's choice of counsel, at the pretrial and trial stages, without the necessity of demonstrating in advance the likely forfeitability of the subject assets. To the extent the majority today invalidates the particular restraining order at issue in this case and rejects the possibility of any legitimate pretrial restraint that infringes upon the right to counsel of choice, I would hold that any legitimate fee paid to Monsanto's attorney not be subject to post-conviction forfeiture.

CARDAMONE, Circuit Judge, with whom PIERCE, Circuit Judge, joins; concurring in part; dissenting in part

I fully concur in the en banc dissenting opinion of Judge Pierce and I concur in the dissenting opinion of Judge Mahoney for substantially the same reasons set forth in the original panel majority opinion in *United States v. Monsanto,* 836 F.2d 74 (2d Cir.1987), except for part "D". Instead, I concur in the per curiam opinion insofar as it holds that bona fide fees actually paid to counsel are exempt from post-conviction forfeiture because otherwise, as Judge Pierce notes, the government by threat of forfeiture after conviction could severely limit a defendant's choice of counsel at the pre-trial and trial stages of the prosecution.

The broad remedial language of the statute which authorizes post-indictment pre-

trial restraint of potentially forfeitable assets contains no intimation that it does not reach legitimate attorneys' fees, *see* 21 U.S.C. § 853(a)(1), (b), (c), (e)(1)(A) (Supp. IV 1986). The legislative history does not support the claim that Congress excluded legitimate attorneys' fees from the forfeiture provisions, *see* S.Rep. No. 225, 98th Cong., 1st Sess. 198–201, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3182, 3381–84 (describing provisions of 18 U.S.C. § 1963 identical to those of 21 U.S.C. § 853). Insofar as Congress considered the issue, it left it for the courts to decide. *See* H.R.Rep. No. 845, Part 1, 98th Cong., 2d Sess. 19 & n. 1 (1984) (report accompanying draft of 1984 CCE forfeiture amendments). Consequently, the original panel's unanimous view—endorsed by *amici* for Monsanto—that the statute reaches legitimate attorneys' fees is one that I adhere to. *See In re Forfeiture Hearing as to Caplin & Drysdale, Chartered,* 837 F.2d 637, 641–42 (4th Cir.1988) (*en banc*) (same view of statute); *United States v. Nichols,* 841 F.2d 1485 (10th Cir.1988) (same).

Further, the use of the word "may" in 21 U.S.C. § 853(e)(1), should be read sensibly to allow for certain invasions into otherwise restrainable assets. It is appropriate therefore to allow a district court to provide for subsistence, necessary medical care, shelter costs, and *court-appointed* counsel for an accused possessing questionable assets because these necessary expenses justify such an invasion for those assets. In light of the broad remedial purposes and liberal construction of the statute, *see* § 853(*o*), it is hard to imagine that the statute, on its own terms, strictly limits these legitimate expenses, but permits unlimited legal expense. The adversarial hearing held to be a "reasonable compromise" by the *Monsanto* majority, 836 F.2d at 82–85, provides procedural safeguards sufficient to satisfy Fifth Amendment due process concerns. Moreover, the hearing mandated by the *Monsanto* panel majority, 836 F.2d at 83, satisfies the qualified Sixth Amendment right to counsel of choice and a district court has authority under the statute to conduct such a hearing.

To the extent that the filed opinions of my other colleagues disagree with the

above, I respectfully dissent from their views.

GEORGE C. PRATT, Circuit Judge, concurring in part and dissenting in part.

I concur in the per curiam opinion insofar as it reverses the order of the district court and remands the case, but I respectfully dissent from so much of the per curiam as directs the district court to modify the restraining order to permit Monsanto access to the restrained assets to pay his attorney's fees, as well as from that part of the per curiam that declares fees paid to Monsanto's defense counsel exempt from subsequent forfeiture.

With respect to some of the varying views expressed by some of my colleagues:

A. *Counsel of choice.*

I do not agree with Chief Judge Feinberg, Judge Oakes, and Judge Kearse that the restraint of assets in Monsanto's possession violates a right to counsel of choice under the sixth amendment. The predominant function of the sixth amendment is to guarantee an effective advocate for a criminal defendant, not to insure that the defendant will be represented by the lawyer he prefers. *Wheat v. United States*, —— U.S. ——, ——, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). Any qualified right to choose one's own counsel is "circumscribed in several important respects." *Wheat v. United States*, at ——, 108 S.Ct. at 1697. For example, a defendant may not choose an advocate who is not a member of the bar, *id.*, and multiple defendants may not be represented by the same counsel where such representation would entail a conflict of interest, *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed. 2d 426 (1978). Perhaps even more significantly, only those defendants who are "financially able" could enjoy this qualified right to counsel of choice. *See Morris v. Slappy*, 461 U.S. 1, 23, 103 S.Ct. 1610, 1622, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring); *see also Wheat v. U.S.*, —— U.S. at ——, 108 S.Ct. at 1697; *United States ex rel. Davis v. McMann*, 386 F.2d 611, 618 (2d Cir.1967); *United States v. Friedman*, 849 F.2d 1488 (D.C.Cir.1988).

B. *Due process and a hearing.*

I agree with the view expressed by Judge Cardamone, Judge Pierce, and Judge Mahoney that a hearing is necessary to meet constitutional due process standards for pretrial restraint of assets in a defendant's possession. I also agree that authority for the hearing may be found in the constitutional need. I would also find authority for that hearing, however, in the discretionary language of the statute. Section 853(e)(1) states that "the court *may* enter a restraining order or injunction * * * or take any other action to preserve the availability of property * * * " (emphasis added). In order to obtain the information necessary to determine whether or not to enter such a restraining order or injunction, the district court necessarily would have the authority to conduct such a hearing.

C. *Defendant's lawful expenditures.*

I disagree with Judge Meskill, Judge Newman, and Judge Winter, who view the same discretionary term "may" as guaranteeing to defendant use of funds in his possession for "ordinary lawful expenditures" including legal counsel. *See United States v. Monsanto*, (Winter, C.J., concurring at 1408). I am unable to understand why principles of equitable jurisprudence even authorize, much less require, extension of the court's equitable protection to a criminal defendant against whom the government has shown both a likelihood of conviction and a likelihood of proof that the property he possesses was illegally acquired. Where are the defendant's "clean hands" normally thought to be a prerequisite to equitable protection?

D. *Post-conviction forfeiture.*

I agree with Judge Miner and Judge Altimari that the issue of post-conviction forfeiture under the statute is not ripe for review. Because there are so many open questions, I think it is unwise for this court to give an advisory opinion on the subject of post-conviction forfeiture of assets that might otherwise have been paid, or might yet be paid, to legal counsel. If the de-

fendant is convicted and his property declared forfeited by the jury, would bona fide legal fees paid to counsel on appeal of the conviction also be exempt? If so, must they be paid before the forfeiture is decreed, i.e.: in advance of conviction? Or must the government's seizure of the property it owns by virtue of this statute be made subject to all claims of counsel for future litigation fees? *See United States v. Friedman*, 849 F.2d 1488 (D.C.Cir.1988) (defendant proceeding in forma pauperis not entitled to release of assets that were declared forfeited after conviction solely for the purpose of retaining counsel to represent him on appeal). Does the protection sought to be accorded to bona fide attorney's fees extend only to the particular case in which the forfeiture is ordered? Or would it extend to fees paid defending other criminal actions brought against the same defendant? Since the issue is inevitably complex and since whatever we say about it is dictum, I think we should refrain from expressing our views until it is necessary to do so in a proper case with a fully developed factual picture.